IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re:

CROWN VANTAGE, INC.,

    Debtor

CROWN PAPER COMPANY, et al.,

    Plaintiffs

    v.

FORT JAMES CORPORATION, f/k/a JAMES RIVER CORPORATION OF VIRGINIA, et al.,

    Defendants
_____/

No. C-02-3838 MMC

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    Before the Court is the motion, filed April 26, 2006 by defendants Fort James Corporation, Fort James Operating Company, Fort James Fiber Company, and Fort James International Holdings, Ltd. (collectively, "Fort James"), for summary judgment as to Count One in plaintiffs' Second Amended Complaint ("SAC"). Plaintiffs Crown Paper Company, Crown Vantage, Inc., Jeffrey H. Beck, Liquidating Trustee, and Crown Paper Liquidating Trust (collectively, "Crown") have filed opposition, to which Fort James has replied. Additionally, with the Court's permission, Fort James has filed additional evidence in

1  support of its motion and Crown has filed a sur-reply.  The matter came on regularly for
2  hearing on June 16, 2006.  Leo R. Beus and Malcolm Loeb of Beus Gilbert LLP appeared
3  on behalf of Crown.  Joseph Coyne of Sheppard, Mullin, Richter & Hampton LLP appeared
4  on behalf of Fort James.  Following the hearing, with the Court's permission, Fort James
5  filed a reply to Crown's sur-reply.
6      Having considered the papers filed in support of and in opposition to the motion, and
7  the arguments of counsel, the Court rules as follows.

## BACKGROUND

9      Crown alleges that in 1995 "Fort James engaged in a series of transactions which
10 culminated in a 'spin-off' of assets to Crown."  (See SAC ¶ 644.)  The "series of
11 transactions" included Crown's transferring cash to Fort James and Fort James's
12 transferring various assets to Crown.  (See SAC ¶¶ 653(a)-(h).)[1]  Crown alleges the cash
13 transfers were made with the "actual intent to hinder, delay, or defraud Crown's creditors,"
14 (see SAC ¶ 723), were "made without Crown receiving any consideration," (see SAC
15 ¶ 727), and resulted in Crown's being "rendered insolvent," (see SAC ¶ 698).

## DISCUSSION

17     In Count One, Crown seeks to set aside the cash transfers to Fort James, pursuant
18 to 11 U.S.C. § 544(b), which provides that a trustee, on behalf of the debtor's creditors,
19 may avoid a transfer "voidable under applicable law."  See 11 U.S.C. § 544(b)(1).
20 "Applicable law" within the meaning of § 544(b) includes state law.  See Wyle v. C.H. Rider
21 & Family (In re United Energy Corp.), 944 F. 2d 589, 593 (9th Cir. 1991).  By order filed July
22 12, 2004, the Court held Virginia law governed Count One.  (See Order, filed July 12, 2004,
23 at 14:11.)  Under Virginia law, a transfer "given with intent to delay, hinder or defraud
24 creditors, purchasers or other persons of or from what they are or may be lawfully entitled
25 to shall, as to such creditors, purchasers or other persons, their representatives or assigns,

---

[1] The transactions comprising the spin-off are set forth in the SAC, (see SAC ¶ 653), and, with more particularity, in the "Sequence of Events" section of the Contribution Agreement between Fort James and Crown, (see Coyle Decl. Ex. Q at ML004379-86).

be void," see Va. Code Ann. § 55-80, and a transfer "which is not upon consideration deemed valuable in law . . . by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made," see Va. Code Ann. § 55-81.

The total amount of cash Crown asserts it transferred to Fort James as part of the "spin-off" is approximately $532 million. (See Pls.' Opp., filed May 12, 2006, at 17:1-2 (stating plaintiffs seek "the $532 million cash taken by Fort James").) Of that amount, it is undisputed that on August 23, 1995, Crown, through an escrow agent, transferred $484,940,953.48 to Fort James, and that Fort James received such sum on August 28, 1995. (See Coyne Decl. Ex. S at MW003762-70.) The parties dispute whether Crown transferred to Fort James the remaining amount of approximately $48 million.

**A. $48 Million "Cash Sweep"**

Crown alleges Fort James engaged in a "cash sweep" and "withdrew" $48 million "from Crown." (See SAC ¶ 653(b).) Fort James argues it is entitled to summary judgment as to this claim, whether based on § 55-80 or § 55-81, because Crown cannot establish such amount was transferred by Crown to Fort James.

To avoid a transfer under Virginia law, Crown must first demonstrate "a transfer was made." See Shaia v. Meyer (In re Meyer), 244 F. 3d 352, 353 (4th Cir. 2001). Crown offers no evidence that Crown itself possessed $48 million and that it transferred such amount, voluntarily or involuntarily, to Fort James. Rather, as Crown explained at the hearing conducted June 15, 2006, its theory as to the $48 million "cash sweep" is that Fort James, before Crown was even operating, had promised to transfer that amount to Crown but did not. (See Reporter's Transcript, June 16, 2006, at 96:3 - 20.) In other words, even under Crown's own theory, there was no "transfer" of $48 million from Crown to Fort James.

Accordingly, Fort James is entitled to summary judgment on Count One to the extent such claim is based on the alleged "cash sweep" of $48 million.

//

**B. $484,940,953.48 Transfer**

With respect to the remaining sum at issue, $484,940,953.48, Fort James argues it is entitled to summary judgment to the extent Count One is based on § 55-81 because Crown cannot establish Fort James failed to provide Crown with consideration. Additionally, Fort James argues that said amount constituted "settlement payments" under 11 U.S.C. § 546(e) and, as such, cannot be avoided under either § 55-80 or § 55-81.

**1. Consideration**

"To avoid a transfer pursuant to [§ 55-81], the trustee must demonstrate that (1) a transfer was made, (2) the transfer was not supported by consideration deemed valuable at law, and (3) the transfer was done when the transferor was insolvent or the transfer rendered the transferor insolvent." See Meyer, 244 F. 3d at 353. As noted, Fort James argues Crown cannot demonstrate the second element, a lack of consideration deemed valuable at law.[2]

At the outset, the parties disagree as to whether, in determining whether Crown received consideration for its transfer of cash, each exchange taken to effectuate the spin-off must be viewed in isolation, as Crown argues, or whether the exchanges must be considered as one integrated transaction, as Fort James argues.

Under Virginia law, where a debtor endeavors to effectuate a particular result, and such result requires the debtor to engage in more than one transfer, each such transfer is considered as one transaction for purposes of determining whether the debtor received consideration. See C-T of Virginia, Inc. v. Euroshoe Associates Ltd. Partnership, 762 F. Supp. 675, 678-79 (W.D. Va. 1991) (holding, where debtor and holding company agreed to accomplish "reverse triangular merger," and effectuation of such agreement required debtor to engage in transfers with both its shareholders and with holding company, each such transfer considered as one "transaction" for purposes of determining if, under Virginia Code § 55-81, debtor received consideration valuable at law), aff'd, 953 F. 2d 637 (4th Cir.

---

[2] Fort James does not argue, for purposes of the instant motion, that Crown was not insolvent at the time of the cash transfer or thereafter.

4

1 1992); see also Official Committee of Unsecured Creditors v. Action Industries, Inc. (In re
2 Phar-Mor, Inc. Securities Litig.), 185 B.R. 497, 503 (W.D. Pa. 1995) (holding, where debtor
3 and investor entered into stock purchase agreement, under which investor first transferred
4 cash to debtor, debtor then repurchased stock from shareholders, and debtor next
5 transferred ownership of repurchased stock to investor, all transfers had to be "collapse[d]
6 . . . into a single transaction to assess their true impact upon the debtor").

7       Here, Fort James and Crown entered into an agreement to effectuate the spin-off by
8 way of a specified "sequence of events," and agreed that each such event must occur as a
9 "condition" to consummation of the agreement. (See Coyne Decl. Ex. L at FJ067687). In
10 other words, it is undisputed that the parties agreed to the series of exchanges in order to
11 effectuate one specific result - - the spin-off. Under such circumstances, for purposes of
12 determining whether Crown received consideration, the exchanges comprising the spin-off
13 cannot be viewed in the abstract or in isolation, but, rather, must be viewed together as one
14 integrated transaction.

15       Crown argues that Fort James, irrespective of the actuality, is estopped from arguing
16 the parties engaged in one integrated transaction. Crown relies on a letter Fort James
17 wrote to the Internal Revenue Service ("IRS"), in which Fort James set forth each of the
18 exchanges the parties intended to make to accomplish a "proposed spinoff transaction."
19 (See id. Ex. C at FJ041834, FJ041836-39.) In describing the exchange by which Fort
20 James would transfer assets to Crown, Fort James stated it would "contribute the assets [to
21 Crown] in exchange for all of the outstanding stock of [Crown] and the assumption by
22 [Crown] of the liabilities (including intercompany debt owed to [Fort James]), associated
23 with [the assets]." (See id. Ex. C at FJ041836.) In describing the exchange by which
24 Crown would transfer cash to Fort James, Fort James stated Crown would "incur third party
25 debt and will use part of the proceeds of such borrowing to pay off the intercompany debt
26 owed to JRC and assumed by [Crown]." (See id. Ex. C at FJ041837.) Fort James asked
27 the IRS to determine whether those two exchanges, if they occurred, would be
28 characterized, for federal tax purposes, as a "reorganization." (See id. Ex. C at FJ041845.)

The IRS subsequently advised Fort James that if the spin-off occurred in the manner described by Fort James, the above-referenced exchanges would be characterized as a "reorganization." (See id. Ex. F at CP-C7-2224.)

Crown argues that because Fort James obtained certain tax benefits by virtue of the above-referenced two exchanges being deemed a "reorganization" under the Internal Revenue Code, Fort James is estopped from characterizing the spin-off as an integrated transaction by which Fort James, in effect, transferred assets to Crown and received from Crown consideration in the form of cash. Crown relies on Robb-Fulton v. Robb (In re Robb), 23 F. 3d 895 (4th Cir. 1994), in which the Fourth Circuit adopted the reasoning of several district courts that had held where a debtor, prior to bankruptcy, obtains a tax benefit by characterizing payments to a former spouse as alimony, the debtor is estopped from recharacterizing such payments as something other than alimony in an effort to avoid having to continue to make such payments. See id. at 898 (citing cases). Courts in other circuits, however, have not found estoppel under such circumstances, holding courts should not be bound by the "labels" the parties use to characterize their obligations to former spouses, but, instead, should determine the actual substance of the obligation. See, e.g., Sampson v. Sampson (In re Sampson), 997 F. 2d 717, 724-25 and n.6 (10th Cir. 1993); Kritt v. Kritt (In re Kritt), 190 B.R. 382, 388 (B.A.P. 9th Cir. 1995).

Crown cites no authority extending the reasoning in Robb beyond claims by debtors to discharge ongoing alimony and/or child support obligations. In any event, the Court finds the latter line of cases more persuasive, at least under the circumstances presented in the instant case. Here, the IRS was fully informed as to the substance of each step comprising the spin-off, and made its own determination as to how the federal tax code would treat two of the various exchanges comprising the spin-off. Further, unlike the cases involving alimony and/or child support, Fort James is not attempting to use the Bankruptcy Code to rid itself of what otherwise would be an ongoing obligation. Consequently, Crown has failed to show Fort James is estopped from arguing the exchanges comprising the spin-off transaction should be treated as one integrated transaction.

Accordingly, the Court finds, for purposes of determining whether Crown received consideration from Fort James for the transfer of $484,940,953.48, the series of exchanges comprising the spin-off must be viewed as an integrated transaction.

Turning to the question of whether that consideration was "valuable," the Court first notes that under Virginia law, "consideration deemed valuable in law," as used in § 55-81, refers to "any valuable consideration received by the transferor." See Meyer, 244 F. 3d at 355 (emphasis added). Unlike statutes that allow a creditor to avoid a conveyance where the debtor did not receive "reasonably equivalent value" for the transfer, § 55-81 "focus[es] on whether a transaction involved any valuable consideration at all", see C-T of Virginia, 762 F. Supp. at 678 (distinguishing 11 U.S.C. § 548(a)(2)); see also C-T of Virginia, 953 F. 2d 637, 1992 WL 12307 at *2 (holding § 55-81 "does not require reasonably equivalent value").

Here, it is undisputed that Crown received assets from Fort James, including real property located in Delaware, Louisiana, Maine, Massachusetts, Michigan, Mississippi, New Hampshire, New Jersey, Vermont, and Virginia, (see Coyne Decl. Ex. Q at ML004380-81, ML004394-431), which assets Crown concedes had a fair market value of between $50,000,000 and $300,000,000 at the time of Crown's acquisition, (see id. Ex. Y at 5, 9-10).

Crown argues that because Crown incurred liabilities in connection with the spin-off, which liabilities, according to Crown, exceeded the value of the assets, (see Potter Decl. ¶¶ 33-38), Crown, in effect, received nothing of value from Fort James. This argument fails, both as a matter of evidence and as a matter of law. First, as defendants point out, Crown does not offer any evidence that, at the time of the spin-off, the assets had no, or a negative, value; rather, Crown offers evidence that when Crown sold certain of the assets several years later, those assets were sold for less than their "book value" at the time of the spin-off. (See id. ¶ 36.) Second, under Virginia law, in determining whether a debtor received consideration for purposes of § 55-81, courts do not use a "balance sheet test." See C-T of Virginia, 762 F. Supp. at 678 (holding courts applying § 55-81 "focus on

7

whether a transaction involved any valuable consideration at all, and not on the balance sheet test"; stating "[a]lthough C-T may have given up more than it received, it gained something, and that is enough to prevent avoidance of the transfer"), aff'd, 953 F. 2d 637, 1992 WL 12307 at *2 (rejecting creditor's argument that § 55-81 requires courts to apply "pecuniary, balance sheet approach"); see also Inspiration Coal, Inc. v. Mullins, 690 F. Supp. 1502, 1505-06 (W.D. Va. 1988) (holding "balance sheet" approach inapplicable under § 55-81).  Rather, as discussed above, Virginia law allows the transfer to be set aside only where the debtor receives nothing of value.  Here, Crown, as noted, concedes the transferred assets had, at the time of the transfers, a fair market value of between $50 million and $300 million, which, as a matter of law, constitutes valuable consideration.

Accordingly, Fort James is entitled to summary judgment on Count One to the extent such claim is based on §55-81.

**2. Settlement Payments**

Fort James, relying on 11 U.S.C. § 546(e), which provides that a "settlement payment" may not be set aside as a fraudulent conveyance, argues that when Crown transferred the $484,940,953.48 to Fort James, such transfer constituted a "settlement payment."  Consequently, Fort James argues, plaintiffs cannot establish a claim under either Virginia Code §§ 55-80 or 55-81.[3]

As noted, Count One is based on 11 U.S.C. § 544, which allows a trustee to avoid transfers voidable under state law.  An exception to § 544 exists as to a "settlement payment . . . made by or to a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency that is made before the commencement of the [bankruptcy] case."  See 11 U.S.C. § 546(e).  A "settlement payment" is defined as "a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment,

---

[3] As discussed above, Fort James is entitled to summary judgment to the extent Count One is based on a claim under § 55-81.  Accordingly, the Court need only consider whether § 546(e) bars Crown's claim under § 55-80.

8

or other similar payment commonly used in the securities trade." See Jonas v. Resolution Trust Corp. (In re Comark), 971 F. 2d 322, 325 (9th Cir. 1992). "Generally, a settlement is the completion of a securities transaction." Id. (internal quotation and citation omitted).

The manner by which Crown obtained the funds it later transferred to Fort James is undisputed: (1) on August 23, 1995, Crown borrowed $243,591,953.48 from banks, (see Coyne Decl. Ex. O at CP-C138-0835-36, CP-C138-0927-29; Ex. S at MW003744); (2) on August 23, 1995, Crown raised $242,500,00 through issuance of "unsecured senior subordinated notes," (see Coyne Decl. Ex. P at CV111503, Ex. S at MW003742); and (3) on August 23, 1995, Crown transferred the sum of $484,940,953.48 to an escrow agent, who, on August 28, 1995, transferred that amount to Fort James upon completion of the spin-off, (see id. Ex. S at MW003746-50).

A transaction that does not occur on a "public market" and does not "involve the process of clearing trades" is not a "settlement payment" within the meaning of § 546(e). See Kipperman v. Circle Trust F.B.O. (In re Grafton Partners, L.P.), 321 B.R. 527, 538 (B.A.P. 9th Cir. 2005); see also Jewel Recovery, L.P. v. Gordon, 196 B.R. 348, 350, 352 (N.D. Tex. 1996) (holding "private transaction which did not implicate the clearance and settlement process" not "settlement payment" within meaning of § 546(e)). An agreement by a bank to loan money is not a transaction on a public market, let alone one that involves the process of clearing trades.

With respect to funds raised by Crown by the issuance of notes, such notes were publicly sold through underwriters, (see Coyne Decl. Ex. P at CV111503), and, consequently, each such sale appears to qualify as a "securities transaction." See 11 U.S.C. § 101(49)(A)(i) (providing "note" is a "security"). The "settlement" of each such transaction, however, was complete, at the latest, when Crown received payment from the issuing underwriters, and thus was complete before the transfer at issue herein between Crown and Fort James.

Accordingly, Fort James is not entitled to summary judgment on Count One to the extent Fort James relies on § 546(e).

**CONCLUSION**

For the reasons stated above, Fort James's motion for summary judgment is hereby GRANTED in part and DENIED in part, as follows.

1. To the extent Count One is based on the alleged "cash sweep" of $48 million, the motion is GRANTED.

2. To the extent Count One is based on the transfer of $484,940,953.48 and premised on a violation of Virginia Code § 55-81, the motion is GRANTED.

3. To the extent Count One is based on the transfer of $484,940,953.48 and premised on a violation of Virginia Code § 55-80, the motion is DENIED.

**IT IS SO ORDERED.**

Dated: August 11, 2006

MAXINE M. CHESNEY
United States District Judge